UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
FIDELITY AND GUARANTY INSURANCE
COMPANY,

                        Plaintiff,

        -against-                                        23 Civ. 6427 (AT)

ACCREDITED SURETY AND CASUALTY                           **ORDER**
INSURANCE COMPANY,

                        Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/16/2025_

ANALISA TORRES, District Judge:

Plaintiff, Fidelity and Guaranty Insurance Company ("Fidelity"), brings this action against Defendant, Accredited Surety and Casualty Insurance Company ("Accredited"), for a declaratory judgment that Accredited is obligated to defend and indemnify Fidelity's named insured, Madison Restoration Corporation ("Madison"), in a workplace injury lawsuit arising out of a construction accident. *See generally* Am. Compl., ECF No. 20. Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 31, 37; *see also* Def. Mem., ECF No. 32; Pl. Mem., ECF No. 38; Def. Reply, ECF No. 40; Pl. Reply, ECF No. 42. For the reasons stated below, Fidelity's motion is GRANTED and Accredited's motion is DENIED.

## BACKGROUND

I. Factual Background

   A. Madison and Kings Group

On February 26, 2020, Madison entered into a subcontractor agreement (the "Subcontractor Agreement") with Kings Group NY Corp. ("Kings Group") for a "façade renovation project" at 6 East 43rd Street in Manhattan. Def. 56.1 ¶ 7, ECF No. 39; Pl. 56.1 ¶ 38, ECF No. 41; Subcontractor

Agreement at 2, ECF No. 31-6.[1]  Under the Subcontractor Agreement, Kings Group agreed to install and remove a "heavy duty sidewalk bridge"[2] on the "East 42nd Street side of the building." Subcontractor Agreement at 22, 28; Def. 56.1 ¶ 7.  The Subcontractor Agreement did not obligate Kings Group to provide scaffolding or perform work inside the building.  Def. 56.1 ¶ 9.

As part of the Subcontractor Agreement, Kings Group agreed to indemnify, defend, and hold harmless Madison against any "claims, damages, losses, and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of" Kings Group's work under the Subcontractor Agreement "to the extent caused by the negligent acts or omissions of [Kings Group]." Subcontractor Agreement at 10.  Kings Group further agreed to "cause its commercial general liability coverage to include" Madison as an "additional insured[] for claims caused in whole or in part by [Kings Group]'s negligent acts or omissions during [Kings Group]'s operations." *Id.* at 18.  The Subcontractor Agreement required Kings Group to ensure that its "additional insured coverage" was "primary and non-contributory to any of [Madison's] general liability insurance policies" and that it would "apply to both ongoing and completed operations." *Id.*

Fidelity issued a commercial general liability insurance policy to Madison (the "Fidelity Policy") covering the period of June 22, 2021, to June 22, 2022.  Def. 56.1 ¶ 1.  Accredited issued Kings Group a commercial general liability insurance policy (the "Accredited Policy") covering the period of October 15, 2020, to October 15, 2021.  *Id.* ¶ 3.  Both policies provide coverage for bodily injury that takes place during the policy period and is caused by an accident.  *Id.* ¶¶ 2, 4.

The Accredited Policy includes endorsements that extend the policy's coverage to "additional insured[s]." Accredited Policy at 28, ECF No. 31-5.[3]  An additional insured is defined as any person

---

[1] Citations to the Subcontractor Agreement are to the ECF page number.

[2] A sidewalk bridge is a temporary, scaffolding-like structure built over a sidewalk to protect people and property from falling debris and construction materials.

[3] Citations to the Accredited Policy are to the ECF page number.

or organization that is "required by written contract executed prior to any claim or suit" or "[a]ny person or organization for whom [Kings Group] [is] performing operations when [Kings Group] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Kings Group's] policy." *Id.* at 28, 33 (cleaned up). An additional insured is covered:

> only with respect to liability for bodily injury, property damage[,] or personal and advertising injury caused, in whole or in part, by:
> a. [Kings Group's] acts or omissions; or
> b. The acts or omissions of those acting on [Kings Group's] behalf; in the performance of [Kings Group's] ongoing operations for the additional insured.

*Id.* at 33 (cleaned up).

The Accredited Policy also contains an endorsement "supersed[ing] any provision to the contrary," which states that the Accredited Policy:

> is primary to and will not seek contribution from any other insurance available to an additional insured under [Kings Group's] policy[,] provided that:
> (1) The additional insured is a [n]amed [i]nsured under such other insurance; and
> (2) [Kings Group] ha[s] agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

*Id.* at 27. The Fidelity Policy states that it is "primary," except that it "is excess over . . . [a]ny of the other insurance [*sic*], whether primary, excess, contingent[,] or on any other basis, that is available to the insured when the insured is an additional insured." Fidelity Policy at 29, ECF No. 38-2.[4]

### B. The Incident and the Underlying Action

On October 13, 2021, Jose Cajamarca was injured while working at 6 East 43rd Street in Manhattan. Def. 56.1 ¶¶ 12–13. Cajamarca filed a workplace injury action (the "First Cajamarca Action") in Supreme Court, Bronx County, naming Kings Group, another contractor, and the owner of the building as defendants. *Id.* ¶ 21. Cajamarca's complaint did not allege specific facts related to

---

[4] Citations to the Fidelity Policy are to the ECF page number.

3

his injury. *See generally* First Compl., ECF No. 31-3. It pleaded in general and conclusory terms that while Cajamarca was "engaged in the performance of construction, renovation, demolition, painting, repair and/or alterations" at the building, he "was caused to be injured" by the defendants' negligent "ownership, operation, direction, supervision, possession, control, construction, repair, rehabilitation and/or alteration" of the building, in that the defendants "failed to provide [Cajamarca] with a safe place to work; failed to provide [him] with a hazard-free work place; failed to provide [him] with proper and approved safety devices;" and "caus[ed] and/or permit[ed] the premises under construction to be and remain in a dangerous, improper[,] and unlawful condition." *Id.* ¶¶ 33, 36–37; Def. 56.1 ¶ 22.

On March 14, 2022, Cajamarca served a bill of particulars in the First Cajamarca Action in response to a demand by Kings Group. Def. 56.1 ¶ 23. The bill specified that the accident occurred "on the interior 1st floor of 6 East 43rd Street, New York, NY." Bill of Particulars ¶ 3, ECF No. 31-7. The bill did not provide further details about the accident, but generally alleged that the defendants were negligent in "storing and stacking construction materials" and construction tools and "causing, permitting[,] and allowing [Cajamarca] to be struck by falling objects." *Id.* ¶ 4.

On May 23, 2022, Cajamarca filed a second lawsuit (the "Second Cajamarca Action") in Supreme Court, Bronx County. Def. 56.1 ¶ 24. In the Second Cajamarca Action, Cajamarca named as defendants Madison and the owner of the building where he was injured. *See generally* Second Compl., ECF No. 16-4. The causes of action and factual allegations were largely the same as those of the First Cajamarca Action. Cajamarca alleged, once again, that, on October 13, 2021, "he was caused to be injured" by the defendants' negligence in, *inter alia*, "the ownership, operation, direction, supervision, possession, control, construction, repair, rehabilitation and/or alteration" of the building where he worked. *Id.* ¶ 32.

4

The First and Second Cajamarca Actions were consolidated (the "Consolidated Action"). Def. 56.1 ¶ 27. On July 16, 2024, Cajamarca filed a stipulation to discontinue, with prejudice, all claims against Kings Group, Madison, and the other contractor in the Consolidated Action. ECF No. 45 ¶ 4; ECF No. 45-1; *see* Def. 56.1 ¶ 28.

II.   Procedural Background

By correspondence dated May 12, 2022, and March 15 and April 11, 2023, Fidelity demanded that Accredited, as Kings Group's insurer, defend and indemnify Madison in connection with the Consolidated Action. *See* Def. 56.1 ¶ 29. By email correspondence dated March 22 and May 3, 2023, Accredited denied the demand. *Id.* ¶ 30.

Fidelity filed the instant action on July 25, 2023. *See* ECF No. 1. Fidelity seeks a declaration that (1) Accredited is obligated to defend and indemnify Madison in connection with the Consolidated Action; (2) Accredited's coverage is primary with respect to the Consolidated Action; (3) Fidelity's coverage of Madison with respect to the Consolidated Action is in excess to that of Accredited; and (4) Fidelity is entitled to all sums it has incurred in the defense of Madison in the Consolidated Action. Am. Compl. at 1, 6.

## DISCUSSION

I.   Legal Standard

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict" for the nonmovant. *Anderson*, 477 U.S. at 248.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact by citing to specific evidence in the record. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex*,

477 U.S. at 323; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). If the nonmovant bears the burden of proof at trial, the movant may satisfy its initial burden by demonstrating that the nonmovant cannot produce evidence to support the existence of a triable issue of material fact. *See Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the movant meets its initial burden, the burden shifts to the nonmovant to establish a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105. "Although a party opposing summary judgment need not prove its evidence in a form admissible at trial or under the evidentiary standard which will be required, it must show facts sufficient to enable a reasonable mind to conclude that a material dispute of fact exists." *Healey v. Chelsea Res. Ltd.*, 736 F. Supp. 488, 491–92 (S.D.N.Y. 1990). In deciding each cross-motion for summary judgment, the Court must view the record in the light most favorable to the nonmovant. *Koch*, 287 F.3d at 165.

II.   Accredited's Duty to Defend

Accredited argues that it was not obligated to defend Madison in the Consolidated Action because it was "clear from the outset of the [Consolidated] [A]ction that Cajamarca's alleged bodily injury could not have been caused, in whole or in part, by Kings Group's acts or omissions" in its performance under the Subcontractor Agreement. Def. Mem. at 1 (quotation omitted).

Under New York law, "[i]t is well settled that an insurance company's duty to defend is broader than its duty to indemnify." *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006). The New York Court of Appeals has described the duty to defend as "exceedingly broad," explaining that an insurer who agrees to defend an insured must "provide a defense whenever the allegations of the [underlying] complaint 'suggest . . . a reasonable possibility of coverage.'" *Id.* (quoting *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (1993)). Even if "facts outside the four corners of the pleadings indicate that the claim may be meritless," the duty to defend remains. *Lepore v.*

6

*Hartford Fire Ins. Co.*, 374 F. Supp. 3d 334, 344 (S.D.N.Y. 2019) (alteration adopted) (quoting *Cook*, 7 N.Y.3d at 137), *aff'd*, 800 F. App'x 29 (2d Cir. 2020); *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714 (2007) ("The merits of the complaint are irrelevant." (quotation omitted)).  If the underlying complaint, "liberally construed, . . . is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false[,] or baseless the suit may be." *Cook*, 7 N.Y.3d at 137.  The duty applies to named insureds and additional insureds alike, *see BP*, 8 N.Y.3d at 714–15, and it attaches upon the filing of any complaint for which there is any "possible factual or legal basis" on which the insurer "might eventually be held to be obligated to indemnify," *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985)).

It is undisputed that the Subcontractor Agreement obligated Kings Group to name Madison as an additional insured under the Accredited Policy and to defend and indemnify Madison in actions alleging bodily injury stemming from Kings Group's performance under the Subcontractor Agreement.  *See* Subcontractor Agreement at 10, 18.  Accredited insists that, at the time the Second Cajamarca Action was filed, there was no basis to conclude that the action fell within its duty to defend Madison as an additional insured.  Def. Mem. at 11–13; *see also Burlington Ins. Co. v. N.Y.C. Transit Auth.*, 29 N.Y.3d 313, 317 (2017) (holding that insurance policies covering "liability for any bodily injury 'caused, in whole or in part,' by the 'acts or omissions' of the named insured . . . appl[y only] to injury proximately caused by the named insured").  The Court disagrees.

Viewed liberally, the complaint in the First Cajamarca Action alleged that Kings Group's negligent "control, construction, repair, rehabilitation[,] and/or alteration" of the building at 6 East 43rd Street proximately caused Cajamarca's injuries on October 13, 2021.  First Compl. ¶ 36.  That claim was pending when the Second Cajamarca Action was filed, in which Cajamarca made the same claim against Madison arising out of the same incident.  *See* Second Compl. ¶ 32.  By the time the

7

actions were consolidated, if not immediately upon the filing of the Second Cajamarca Action, the existence of identical claims against Kings Group and Madison for proximately causing Cajamarca's injury created at least a "possible factual or legal basis," *Allianz*, 416 F.3d at 115 (quotation omitted), to conclude that Cajamarca's claims fell "within the embrace" of the Accredited Policy, *Cook*, 7 N.Y.3d at 137 (citation omitted); *see also Hous. Cas. Co. v. Hudson Excess Ins. Co.*, No. 21 Civ. 3182, 2021 WL 4555526, at *3 (S.D.N.Y. Oct. 4, 2021) ("[A]ny doubt about whether the complaint states a claim within the policy's coverage 'must be resolved in favor of the insured and against the carrier.'" (quoting *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014))).

Accredited argues that the Court may look beyond the bare allegations of the underlying complaints to "extrinsic evidence" that demonstrates that Cajamarca had no possible claim against Kings Group that could have triggered Accredited's duty to defend Madison. Def. Mem. at 14. Specifically, before the Second Cajamarca Action was filed in which Madison was named as a defendant, Cajamarca produced the bill of particulars in the First Cajamarca Action alleging that his injury occurred in the "interior" of the building when he was struck by falling debris and construction materials. Bill of Particulars ¶ 3. Because the scope of Kings Group's work for Madison was limited to constructing and de-constructing a sidewalk bridge on the "side" of the building to support a "façade renovation project," Subcontractor Agreement at 22, 28; Def. 56.1 ¶ 7, Accredited contends, Kings Group could not have possibly had any involvement in the worker's injury on the interior of the building, Def. Mem. at 14.

Accredited's reliance on Cajamarca's bill of particulars does not move the needle. The Court of Appeals has long emphasized that "a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered" by the policy. *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991); *see also Hous. Cas. Co.*, 2021 WL 4555526, at *4

("[E]xtrinsic evidence that goes directly to the merits of the claims in the underlying action cannot be used to defeat the duty to defend."). The bill of particulars does not undermine the Court's conclusion that Cajamarca pleaded allegations—albeit possibly meritless ones—giving rise to a "reasonable possibility," *Cont'l Cas. Co.*, 80 N.Y.2d at 648, that Kings Group could "eventually" be held liable for acts or omissions that caused Cajamarca's injuries, *Allianz*, 416 F.3d at 115 (quotation omitted); *cf. Liberty Mut. Ins. Corp. v. N.Y. Marine & Gen. Ins. Co.*, 505 F. Supp. 3d 260, 271 (S.D.N.Y. 2020) (concluding that additional detail provided in a bill of particulars did not terminate the carrier's duty to defend, which attached upon the filing of a complaint alleging, in general terms, that the insured's negligence in "allowing a dangerous, defective condition to be present and to be used during the course of construction, alteration[,] or repairs" was the "cause" of the underlying plaintiff's injuries).

Accredited contends that this conclusion ignores the facts. Def. Reply at 1, 8. But the relevant question is not what happened at the building where Cajamarca was working on October 13, 2021, but what was alleged against Madison and who would cover Madison's defense. "[W]hen a policy represents that it will provide the insured with a defense," the policy is as much "litigation insurance" as it is "liability coverage." *Cook*, 7 N.Y.3d at 137. That coverage may require the carrier to defend additional insureds against meritless claims, including those which it "may not be required to pay once the litigation has run its course." *Id.* Such is the benefit that Kings Group bargained for in the Accredited Policy, and New York courts' approach to such terms is well established. *See Fitzpatrick*, 78 N.Y.2d at 63. The Court sees no reason to deviate from the caselaw.

III.     <u>Primary Coverage</u>

Fidelity claims that Accredited's coverage is "primary and non-contributory" and the Fidelity Policy is, by its terms, "rendered excess." Pl. Mem. at 17–18. The Court agrees.

"In order to determine the priority of coverage among different policies, a court must review and consider all of the relevant policies at issue." *BP*, 8 N.Y.3d at 716. The Accredited Policy provides that it is "primary to and will not seek contribution from any other insurance available to an additional insured," provided that the "additional insured is a [n]amed [i]nsured under such other insurance" and that Kings Group "agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured." Accredited Policy at 27. The parties do not dispute that Madison is a named insured under the Fidelity Policy, *see* Fidelity Policy at 3, or that Kings Group and Madison agreed via a written contract that Kings Group's insurance would be primary, *see* Subcontractor Agreement at 18. Moreover, the Fidelity Policy provides that it is "excess over" any other insurance policy, "whether primary, excess, contingent or on any other basis, that is available to [Madison] when [Madison] is an additional insured." Fidelity Policy at 29.

Based on the plain language of the relevant agreements, there is no genuine dispute that Accredited's coverage is primary and non-contributory and Fidelity's coverage is excess over Accredited's with respect to the defense and indemnification of Madison in the Consolidated Action. Accredited does not argue to the contrary. *See* Pl. Reply at 6–7; *see generally* Def. Mem.; Def. Reply. Fidelity is therefore entitled to reimbursement of costs and fees incurred in defending Madison in connection with the Consolidated Action.

## CONCLUSION

For the reasons stated, Accredited's motion for summary judgment is GRANTED and Fidelity's cross-motion is DENIED.

By **February 6, 2025**, the parties shall jointly file a proposed judgment consistent with this order or, if the parties are not in agreement on damages, interest, attorney's fees, and costs, if any, each party's breakdown of proposed damages and the basis for each element of damages, including

interest, attorney's fees, and costs, supported by affidavits and citations to legal authority where appropriate.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 31 and 37.

SO ORDERED.

Dated: January 16, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge